UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
BARBARA WAGNER,

                    Plaintiff,

          -against-                          MEMORANDUM & ORDER
                                             11-CV-1613(JS)(ARL)
COUNTY OF NASSAU and COUNTY OF
NASSAU DEPARTMENT OF PUBLIC
WORKS,

                    Defendants.
----------------------------------------x
APPEARANCES
For Plaintiff:          Josh H. Kardisch, Esq.
                        Kardisch Law Group, PC
                        585 Stewart Avenue, Suite 740
                        Garden City, NY 11530

For Defendants:         Liora M. Ben-Sorek, Esq.
                        Nassau County Attorney's Office
                        One West Street
                        Mineola, NY 11501

SEYBERT, District Judge:

          Currently pending before the Court is defendants
County of Nassau (the "County") and County of Nassau Department
of Public Works' ("DPW" and together with the County,
"Defendants") motion for summary judgment. For the following
reasons, Defendants' motion is GRANTED IN PART and DENIED IN
PART.

Plaintiff Barbara Wagner ("Plaintiff") worked for Defendants from 1988 to 1991 and from 1992 to 2007. (Defs.' Am. 56.1 Stmt., Docket Entry 23-1, ¶ 1.) In 2001, she was promoted to a Laborer II position. (Defs.' Am. 56.1 Stmt. ¶ 11.) In 2005, she was reassigned to the Fleet Management Bureau at the DPW, where she received disciplinary actions regarding latenesses and insubordination. (Defs.' Am. 56.1 Stmt. ¶¶ 12, 14.)

On March 16, 2007, Plaintiff moved from the Fleet Management Bureau to the Facilities Management Bureau. (Defs.' Am. 56.1 Stmt. ¶ 15.) There, she reported directly to Peter Andriano, the Deputy Superintendent of Buildings. (Defs.' Am. 56.1 Stmt. ¶ 15.) Mr. Andriano assigned Plaintiff the task of obtaining records of fuel oil tanks from the Water Management Office. (Defs.' Am. 56.1 Stmt. ¶ 15.) According to Defendants, however, Mr. Andriano was not satisfied with Plaintiff's work. (Defs.' Am. 56.1 Stmt. ¶¶ 15-16.) As such, Plaintiff was transferred to Warehouse A, where she could receive increased supervision. (Defs.' Am. 56.1 Stmt. ¶ 17.)

---

[1] The following material facts are drawn from the parties' Local Civil Rule 56.1 Statements ("56.1 Stmt.") and Counterstatements ("56.1 Counterstmt.") and the evidence in support. Where relevant, the Court has noted specific factual disputes.

Plaintiff's duties while at Warehouse A included straightening aisles and performing inventory on boxes of nuts, bolts, and screws. (Defs.' Am. 56.1 Stmt. ¶ 20.) According to Defendants, Plaintiff's unsatisfactory work performance continued. (Defs.' Am. 56.1 Stmt. ¶ 21.) She was late and absent and used the County phone and computer for her own personal use. (Defs.' Am. 56.1 Stmt. ¶ 21.) In fact, while assigned to Warehouse A, Plaintiff requested an accommodation to change her hours from 7:00 a.m. to 3:30 p.m. to 8:00 a.m. to 4:30 p.m. in order to reduce her tardiness. (Defs.' Am. 56.1 Stmt. ¶ 24.) Defendants made this change, though they maintain that it did not reduce Plaintiff's tardiness. (Defs.' Am. 56.1 Stmt. ¶ 24.)

Early in her assignment at Warehouse A, Plaintiff complained to Kurt Roocke, Plaintiff's direct supervisor, and Mr. Andriano that she was not feeling well and believed it to be caused by the ambient environment within the warehouse. (Defs.' Am. 56.1 Stmt. ¶ 26.) During this time, Plaintiff also had a second job working as a Data Entry Clerk at the Uniondale Fire District. (Defs.' Am. 56.1 Stmt. ¶ 23.)

Although no other employees complained, Defendants arranged for the Office of the Fire Marshal-County of Nassau Hazardous Materials Division to test the environment in the warehouse on November 19, 2007. (Defs.' Am. 56.1 Stmt. ¶ 27.)

On December 20, 2007, DPW also requested that the County Department of Health test the indoor air quality. (Defs.' Am. 56.1 Stmt. ¶ 27.) The results from the Fire Marshal were normal, though there may have been trace amounts of carbon monoxide. (Defs.' Am. 56.1 Stmt. ¶¶ 27-28; Pl.'s Am. 56.1 Counterstmt., Docket Entry 23-3, ¶ 27.) Plaintiff asserts that the January 17, 2008 inspection by the County Department of Health revealed high levels of carbon dioxide, low temperatures, and poor ventilation. (Pl.'s Am. 56.1 Counterstmt. ¶ 27.) Plaintiff also brought in her own device to test for carbon monoxide, and the results were normal. (Defs.' Am. 56.1 Stmt. ¶ 28.)

Plaintiff subsequently gave Roocke a note from Steven Seyburn, M.D. dated November 21, 2007 stating that Plaintiff's work environment was making her sick. (Defs.' Am. 56.1 Stmt. ¶¶ 30-31.) Fredrick Maroni, another of Plaintiff's supervisors, then sent Plaintiff home sick until she could produce a doctor's note authorizing her to return to work "with no restrictions." (Defs.' Am. 56.1 Stmt. ¶ 31.) According to Defendants, DPW's return to work policy requires that an employee submit a doctor's note stating that he or she can return to work with no restrictions. (Defs.' Am. 56.1 Stmt. ¶ 36.) This is because there are no "light duty" positions with DPW and an employee

must remain out sick until she can return to work in a full capacity. (Defs.' Am. 56.1 Stmt. ¶ 37.)

Plaintiff did not return to work after November 30, 2007. (Defs.' Am. 56.1 Stmt. ¶ 32.) However, she did submit two other doctor's notes from Jeffrey M. Caruso, D.O., dated December 3, 2007 and December 5, 2007, respectively. (Defs.' Am. 56.1 Stmt. ¶ 33.) The December 3rd note stated that Plaintiff could return to work but that she would have to be "closely monitored." (Defs.' Am. 56.1 Stmt. ¶ 33.) Defendants rejected this letter due to the caveat of close monitoring and because the letter did not make clear whose responsibility it was to monitor Plaintiff. (Defs.' Am. 56.1 Stmt. ¶ 33.) The December 5th note stated that the work environment was making Plaintiff ill but that she could return to work without any restrictions. (Pl.'s 56.1 Counterstmt. ¶ 77; Def.'s 56.1 Counterstmt., Docket Entry 23-4, ¶ 79.) Plaintiff maintains that she was unaware that the letters had been rejected. (Pl.'s Am. 56.1 Counterstmt. ¶ 34.) Plaintiff did not submit any further notes and Defendants maintained that there were no available positions within DPW to which Plaintiff could be transferred. (Defs.' Am. 56.1 Stmt. ¶¶ 34-35; Pl.'s Am. 56.1 Counterstmt. ¶ 35.)

Thereafter, Plaintiff submitted a Step 1 Contract Grievance with her union, the CSEA. (Defs.' Am. 56.1 Stmt.

¶ 38.)   Plaintiff also made a complaint to the Public Employee
Safety and Health Bureau ("PESH") and participated in a Workers'
Compensation hearing.   (Defs.' Am. 56.1 Stmt. ¶¶ 40, 43.)   At
the Workers' Compensation hearing, medical evidence showed that
Plaintiff had a history of allergic rhinitis, receiving allergy
shots, and Gastroesophageal Reflux Disease ("GERD").   (Defs.'
Am. 56.1 Stmt. ¶ 42.)   Ultimately, the New York State Workers'
Compensation Board disallowed Plaintiff's claim.   (Defs.' Am.
56.1 Stmt. ¶ 43.)

By letter dated December 19, 2008, Dena Miller
DeFranco, the DPW Deputy Commissioner, informed Plaintiff of her
termination under Section 71 of the New York State Civil Service
Law.   (Defs.' Am. 56.1 Stmt. ¶ 41.)   However, after the New York
State Workers' Compensation Board's decision, DPW withdrew its
December 19, 2008 termination letter and put Plaintiff on notice
that her employment may be terminated pursuant to Section 73 of
the New York State Civil Service Law due to her continued
absence from work for a year or more.   (Defs.' Am. 56.1 Stmt.
¶ 47.)   Plaintiff was also given the opportunity to discuss her
termination at a February 5, 2009 meeting.   (Defs.' Am. 56.1
Stmt. ¶ 47.)   Plaintiff attended the February 5, 2009 meeting,
but by letter dated February 18, 2009, DPW informed Plaintiff of
her termination.   (Defs.' Am. 56.1 Stmt. ¶¶ 48-49.)

Plaintiff had the opportunity to return to work upon examination by a medical officer selected by the Commissioner, but she never made such an application. (Defs.' Am. 56.1 Stmt. ¶¶ 49-51.) Plaintiff asserts that she tried to request that an appointment be set up, but that the letters she received did not inform her of how to go about doing so. (Pl.'s Am. 56.1 Counterstmt. ¶ 46.)

Currently, Plaintiff has raised claims against Defendants pursuant to the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL").

DISCUSSION

Defendants now seek summary judgment. The Court will first address the applicable legal standard before turning to Defendants' arguments more specifically.

I.  Legal Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted); see also FED. R. CIV. P. 56(c).

"In assessing the record to determine whether there is a genuine
issue to be tried . . . the court is required to resolve all
ambiguities and draw all permissible factual inferences in favor
of the party against whom summary judgment is sought." McLee v.
Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). The burden of
proving that there is no genuine issue of material fact rests
with the moving party. Gallo v. Prudential Residential Servs.,
L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. &
Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that
burden is met, the non-moving party must "come forward with
specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir.
1998), to demonstrate that "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party,"
Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505,
2510, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory
allegations or denials will not suffice." Williams v. Smith,
781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations
do not create a material issue of fact." Weinstock v. Columbia
Univ., 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on
other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp.,
450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

II. Defendants' Motion

Defendants seek summary judgment, arguing that: (1)
Plaintiff's failure to accommodate claim under the ADA fails,

(2) Plaintiff's discrimination claim under the ADA fails, (3) Plaintiff's hostile work environment claim fails, (4) Plaintiff's retaliation claim fails, and (5) Plaintiff's request for damages pursuant to 42 U.S.C. § 1981a should be denied because Defendants made a good faith effort to accommodate Plaintiff.

Before the Court addresses the substantive merits of Defendants' motion, a few points are worth noting. First, Plaintiff asserts that she has withdrawn her failure to accommodate claim. (Pl.'s Opp. Br., Docket Entry 36, at 2, 11 n.5.) Given Plaintiff's apparent intention to withdraw this claim, the Court deems it withdrawn and will not consider Defendants' arguments in this regard. Second, although Defendants' opening brief mentions a potential hostile work environment claim, there is no further mention of such a claim in either Plaintiff's opposition brief or Defendants' reply. In failing to oppose Defendants' motion in this regard, Plaintiff has abandoned the hostile work environment claim. See Zinter v. Handling, Inc. v. Gen. Elec. Co., No. 04-CV-0500, 2005 WL 1843282, at * 4 n.6 (N.D.N.Y. Aug. 2, 2005) ("[B]ased on [plaintiff's] failure to offer any argument in opposition, the court deems [defendant's] point conceded . . . ."); see also Adams v. N.Y. State Educ. Dep't, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (claim deemed abandoned because plaintiff did

not respond to, or even mention, claim in opposition to defendants' motion to dismiss).

Thus, the Court turns to the remaining issues.

A. Plaintiff's Discrimination Claim

Defendants seek summary judgment on Plaintiff's discrimination claim because, they argue, Plaintiff is not disabled and Plaintiff did not suffer an adverse employment action. The Court disagrees.

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Claims under the ADA, such as the one Plaintiff raises here, are subject to the same burden-shifting framework under McDonell Douglas as Title VII claims. See, e.g., Heyman v. Queens Vill. Comm. for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). That framework requires a plaintiff to first establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008). Once the defendant provides such a reason, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the

defendant were not its true reasons, but were a pretext for discrimination." Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks and citations omitted).

To establish a prima facie case under the ADA[2], a plaintiff must show that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she was discharged due to her disability. Id. at 422; Heyman v. Queens Vill. Comm. for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999) (citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998)).

Defendants do not dispute the first and third elements of a prima facie case. Rather, they begin by arguing that Plaintiff was not disabled within the meaning of either the ADA or NYSHRL. Under the ADA, "disability" means: "A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; B) a record of such an impairment; or C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); accord Montesano, 956 F. Supp. 2d at 422. The NYSHRL, more broadly defines "disability" as "a physical,

_____

[2] Plaintiff's claims pursuant to the NYSHRL are subject to the same burden-shifting analysis as her claims pursuant to the ADA. The NYSHRL, however, defines "disability" in broader terms than the ADA. See Montesano v. Westgate Nursing Home, Inc., 956 F. Supp. 2d 417, 422 (W.D.N.Y. 2013).

mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques . . . ." N.Y. Exec. Law § 292(21). Plaintiff asserts that, although she may not have had a physical or mental impairment that substantially limited a major life activity, Defendants "regarded" her as having such an impairment. (Pl.'s Opp. Br. at 13-18.)

### 1. Whether Plaintiff was "Disabled"

"Whether an individual is 'regarded as' having a disability depends not on the existence of an actual disability but on the employer's perception of the employee and is a question of intent."[3] Skinner v. City of Amsterdam, 824 F. Supp. 2d 317, 327-28 (N.D.N.Y. 2010) (internal quotation marks and citations omitted). Here, the major life activities at issue are working and breathing. Prior to January 2009, the ADA required that Defendants perceive Plaintiff as disabled as defined under the ADA--namely that she suffered from an impairment that limited a major life activity. See, e.g.,

---

[3] The inquiry under the NYSHRL as it pertains to "regarded as" claims is the same as that under the ADA. See, e.g., Branson v. Ethan Allen, Inc., No. 02-CV-6588, 2004 WL 2468610, at *4 (E.D.N.Y. Nov. 3, 2004); Walker v. Consol. Edison Co. of N.Y., Inc., No. 00-CV-8598, 2002 WL 31385830, at *4 n.1 (S.D.N.Y. Oct. 22, 2002). The Court will therefore provide a singular discussion.

Montesano, 956 F. Supp. 2d at 423 ("With respect to the major life activity of working, plaintiff must show that defendants regarded her as significantly restricted in her ability to perform a class or a broad range of jobs."). Currently, the ADA defines "regarded as" to include an impairment "whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Plaintiff maintains that, to the extent that Defendants continued to subject her to prohibited acts through February 2009--past the effective date of amendments to the ADA--the current iteration of the ADA applies. (Pl.'s Opp. Br. at 14.)

Under either version of the ADA, there is enough to defeat summary judgment. Certainly, Defendants are correct in that Plaintiff's complaints related solely to the ambient environment in Warehouse A and that asthma or breathing difficulties do not necessarily equate to a disability under the ADA. See Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758, 2014 WL 917198, at *8 (E.D.N.Y. Mar. 10, 2014) (finding that the plaintiff was not disabled because she did not show that it caused substantial difficulty breathing); Droutman v. N.Y. Blood Ctr., Inc., No. 03-CV-5384, 2005 WL 1796120, at *6 (E.D.N.Y. July 27, 2005) ("Thus, while asthma is certainly an 'impairment,' it cannot constitute a 'disability' under the ADA unless it substantially limits or significantly restricts the

sufferer's ability to perform a major life activity--in this case, work." (emphasis in original)). Moreover, Plaintiff maintained a second job, thus showing that she was capable of working, and Maroni and Roocke testified that they did not believe that the work environment was making Plaintiff ill. (Pl.'s Dep., Docket Entry 34-4 Ex. P, at 36; Maroni Dep., Docket Entry 37-2 Ex. B, at 30-31; Roocke Dep., Docket Entry 34-4 Ex. N, at 48.)

On the other hand, all three letters from Defendants regarding Plaintiff's termination specifically refer to a "disability." (See Faraci Decl., Docket Entry 34-2, Ex. Z (Dec. 19, 2008 Letter to Plaintiff stating: "Please be advised, however, that within one year after the termination of your disability, you may make application to the Nassau County Civil Service Commission for a medical examination."); id. Ex. BB (Jan. 28, 2009 Letter to Plaintiff withdrawing Dec. 19, 2008 termination letter but stating that Plaintiff has "been continuously absent from and unable to perform the duties of [her] position for one year or more by reason of a disability"); id. Ex. CC (Feb. 18, 2009 Letter to Plaintiff stating: "Within one year after the termination of the disability, you may make an application to the Nassau County Civil Service Commission for a medical examination to be conducted by a medical officer selected for the purpose by the Commission.").

Defendants argue that "disability" as referred to in the January 28 and February 18, 2009 letters relates to the term as defined under New York State Workers' Compensation Law, not the ADA. (Defs.' Br., Docket Entry 34-1, at 17.) Nonetheless, letters that explicitly contain language regarding Plaintiff's "disability" at least raise a question of fact on this issue. It is hard to imagine a clearer expression that Defendants at least may have perceived Plaintiff as being disabled than such letters. See Graham v. Watertown City Sch. Dist., No. 10-CV-0756, 2011 WL 1344149, at *8 (N.D.N.Y. Apr. 8, 2011) ("By acknowledging that case law 'required' the District to assign plaintiff to a vacant position and imposed 'an obligation to accommodate' her, the District evidenced a perception that plaintiff was disabled within the meaning of the ADA.").

In fact, the letters, and policy, are more troublesome for Defendants' case than they acknowledge. See Warmsley v. N.Y. City Transit Auth., 308 F. Supp. 2d 114, 121 (E.D.N.Y. 2004) ("[T]he [defendant], by implementing its 'disability has terminated' policy, required individuals returning from medical leave to be disability-free. Thus, [defendant] regarded every former employee who had taken a medical leave as 'substantially limited' in his ability to work in a broad range of jobs."); see also Rodriguez v. Atria Sr. Living Grp., Inc., 887 F. Supp. 2d 503, 511 & n.3 (S.D.N.Y. 2012) (noting that a "100% healed"

policy prevents individual assessment and therefore violates the ADA).

Moreover, the Laborer II position was relatively unskilled and Defendants rejected Plaintiff's doctors' notes despite language that she could return and despite any hazards posed by the air quality within Warehouse A.  See McCowan v. HSBC Bank USA, N.A., 689 F. Supp. 2d 390, 404 (E.D.N.Y. 2010) ("Accepting plaintiff's evidence as true and drawing all reasonable inferences in her favor, a reasonable jury could conclude that [defendants] regarded plaintiff as incapable of performing jobs that required completion of tasks other than filing and answering telephones."); Warmsley, 308 F. Supp. 2d at 121 (finding that the plaintiff "was presumptively regarded as unable to work" where the defendant did not allow plaintiff to return despite letters stating that, although plaintiff continued to suffer from renal disease, he could return to work).

Accordingly, Defendants' motion for summary judgment on the grounds that Plaintiff was not disabled is DENIED.

### 2. Whether Defendants Terminated Plaintiff "Because Of" Her Disability

Defendants next assert that Plaintiff did not suffer any adverse action "because of" her disability.  Rather, they

assert that she was terminated due to the fact that she was absent from the job for a year. The Court disagrees.

"Discriminatory intent may be inferred from the totality of the circumstances, including . . . the historical background of the decision . . .; the specific sequence of events leading up to the challenged decision . . .; [and] contemporary statements by members of the decisionmaking body." Kaufman v. Columbia Mem'l Hosp., --- F. Supp. 2d ----, 2014 WL 652886, at *11 (N.D.N.Y. Feb. 19, 2014) (internal quotation marks and citation omitted) (alterations in original). Here, the Court finds that the context and sequence of events surrounding Plaintiff's termination[4] present enough to defeat summary judgment on this point.

First, Plaintiff has presented evidence that she did not request sick leave, but rather that Mr. Maroni sent her home against her will. (See Maroni Dep. at 30; Wagner Dep. at 89.)

---

[4] In the context of the retaliation claim, Defendants apparently assert that Plaintiff's termination is the only potential adverse employment action. (Defs.' Br. at 23.) The Court will discuss that issue more infra. The standard for an adverse employment action for a discrimination claim, though, is more stringent than for a retaliation claim. See Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (describing an adverse employment action as a "materially adverse change in the terms and conditions of employment"). Precedent suggests that forced, paid leave is not an adverse employment action for a discrimination claim. (See Pl.'s Dep. at 89, 100 (indicating that Plaintiff received paid leave)); Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006); Ghaly v. U.S. Dep't of Agriculture, 739 F. Supp. 2d 185, 199 (E.D.N.Y. 2010).

Second, Mr. Maroni sent Plaintiff home on a Friday. (See Faraci Decl. Ex. V.) She attempted to return to work that Monday. (See Faraci Decl. Ex. W.) Plaintiff has submitted evidence that the policy at issue did not require that Plaintiff even seek approval to return to work, and thus Defendants' rejection of her attempt was not necessarily justified. (See Kardisch Decl., Docket Entry 36-1 Ex. 1.)

Finally, the contemporaneous statement along with the termination--namely that Plaintiff had been absent for a year, seemingly due to her disability--demonstrates a potential inference of discrimination. Accordingly, Defendants' motion for summary judgment in this regard is DENIED.

### 3. Legitimate Business Reason and Pretext

Defendants also briefly assert that, even if Plaintiff could make out a prima facie case, her claim fails because Defendants have shown a legitimate, nondiscriminatory reason for her termination and Plaintiff cannot show pretext. Again, the Court disagrees.

Certainly, continued absence for one year or more is a legitimate, nondiscriminatory reason to terminate Plaintiff. See, e.g., Constance v. Pepsi Bottling Co. of NY, No. 03-CV-5009, 2007 WL 2460688, at *24 (E.D.N.Y. Aug. 24, 2007) (finding that job abandonment or excessive absenteeism is a legitimate business reason for termination (collecting cases)). As to

pretext, the state of the case law is unclear as to whether discriminatory intent must be the sole factor, or only a motivating factor, in Defendants' decision to take a discriminatory action. See, e.g., Parker v. Columbia Pictures, Indus., 204 F.3d 326, 336-37 (2d Cir. 2000); Jian Wang v. Int'l Bus. Machs. Corp., No. 11-CV-2992, 2014 WL 901507, at *4 n.3 (S.D.N.Y. Feb. 11, 2014). Here, though, the February 18, 2009 termination letter itself acknowledges that Plaintiff's absence was due to her disability. (See Faraci Decl. Ex. CC.) A reasonable jury could conclude that such evidence demonstrates that Plaintiff's perceived disability was the sole motivating factor in Defendants' decision to take adverse action. Thus, Defendants' motion for summary judgment is DENIED.

B. Plaintiff's Retaliation Claim

Defendants also seek summary judgment on Plaintiff's retaliation claim, asserting that Plaintiff's claim fails because she cannot establish a causal connection between the protected activity and her termination. The Court disagrees.

Retaliation claims follow the same McDonnell-Douglas burden-shifting framework discussed earlier. The plaintiff bears the initial burden of establishing a prima facie case of retaliation. Once the plaintiff has satisfied the elements of his prima facie case, a presumption of retaliation is created and the burden shifts to the defendant to "articulate a

legitimate, non-retaliatory reason for the adverse employment action." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citation omitted); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 (2d Cir. 2011). In Title VII cases, once such a reason has been presented, the presumption of retaliation dissipates and the employee must show that retaliation was the "but-for" cause of the challenged employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, --- U.S. ----, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013). Neither the Second Circuit nor the parties have addressed whether "but for" causation applies to retaliation claims pursuant to the ADA. See Castro v. City of N.Y., --- F. Supp. 2d ----, 2014 WL 2582830, at *17 n.34 (E.D.N.Y. June 5, 2014).

> In any event,

> [t]o establish a prima facie claim of retaliation in violation of the ADA, a plaintiff must show that: "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity."

Graham v. Watertown City Sch. Dist., No. 10-CV-0756, 2011 WL 1344149, at *11 (N.D.N.Y. Apr. 8, 2011) (quoting Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002)). Defendants do not dispute that Plaintiff's complaints regarding the

environment in Warehouse A and her submission to DPW of the November 21, 2007 note from Dr. Seyburn, for example, are protected activities. (Defs.' Br. at 23.) See Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758, 2014 WL 917198, at *11 (E.D.N.Y. Mar. 10, 2014) ("Requests for disability accommodation and complaints, whether formal or informal, about working conditions related to one's alleged disability are protected activities."). Nor do they dispute the second and third elements of a prima facie retaliation case. However, they maintain that there is no causal connection between any protected activities and the adverse action of Plaintiff's termination.

Contrary to Defendants' assertion, however, Plaintiff's termination is not the only potential adverse employment action for purposes of her retaliation claim. "[T]he key inquiry is whether the effect of defendants' decision was 'materially adverse,' i.e., 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Ragusa v. Malverne Union Free Sch. Dist., 381 F. App'x 85, 90 (2d Cir. 2010) (quoting Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (alterations in original)).

Plaintiff asserts that other adverse employment actions included that Defendants forced her to take sick leave,

required and rejected her doctors' notes, and refused to allow her to return to work. Requiring doctors' notes to return from sick leave is not an adverse employment action, even under the more lenient standard applicable to retaliation claims. See, e.g., Blake v. Potter, No. 03-CV-733, 2007 WL 2815637, at *9 (S.D.N.Y. Sept. 24, 2007); Nicastro v. Runyon, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999). However, involuntary leave or unjustified charging of sick days can be a sufficient adverse action. See Rolon v. Ward, No. 05-CV-0168, 2008 WL 4700705, at *22 (S.D.N.Y. Oct. 24, 2008) ("If the jury determines that plaintiff lost sick leave days as a result of defendants' wrongful charging of sick leave days, this could constitute an adverse employment action."); Figueroa v. N.Y. Health & Hosps. Corp., 500 F. Supp. 2d 224, 234 (S.D.N.Y. 2007) (distinguishing itself from an instance where the plaintiff was placed on involuntary leave and not allowed to return to work, which constituted an adverse action); cf. Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) ("The loss of all vacation and sick days--material benefits of her employment with the NYPD--is sufficient to allege a materially adverse employment action under Section 1981 [retaliation].").

Thus, Defendants' contention that there is no temporal proximity between the protected acts and the adverse employment acts is disingenuous. (See Defs.' Br. at 23.) "'[A] close

temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation.'" Graham, 2011 WL 1344149, at *11 (quoting Treglia, 313 F.3d at 720). Here, Plaintiff submitted a doctor's note on November 21, 2007. (Faraci Decl. Ex. U.) Her last day of work was November 30, 2007. (See, e.g., Pl.'s Dep. at 38.) Plaintiff submits evidence that, at that time, she was involuntarily placed on sick leave. Thus, there is temporal proximity and Defendants' motion for summary judgment on Plaintiff's retaliation claim due to lack of a prima facie case is DENIED.

Finally, Defendants sought summary judgment only on the grounds that Plaintiff cannot establish a prima facie case for retaliation, and Plaintiff has likewise confined her arguments. Neither party has addressed whether Defendants can show a legitimate business need for the alleged retaliatory acts, Plaintiff's potential to demonstrate causation, or whether "but-for" causation even applies. At this stage, Defendants' summary judgment motion, as presented, does not warrant a finding in Defendants' favor. Defendants theoretically have presented a legitimate business reason in placing Plaintiff on leave and strictly adhering to its policy as well as terminating Plaintiff upon one year of absenteeism. Moreover, Plaintiff has demonstrated that retaliatory motive was at least a potential

motivating factor--if not a but-for cause--in taking adverse employment actions against her.  If Plaintiff had not complained about Warehouse A, the evidence plausibly demonstrates that Defendants would not have asked her to take leave, nor would she have been absent, and Defendants would have permitted her to work as usual.  The parties may--and indeed should--be prepared to address these issues and the applicable standards in greater detail in <u>motions in limine</u> and/or in preparation for trial.

C. <u>Damages Pursuant to 42 U.S.C. § 1981a</u>

Finally, Defendants also seek summary judgment insofar as Plaintiff seeks damages pursuant to 42 U.S.C. § 1981a ("Section 1981a").  The Court agrees with Defendants that Plaintiff cannot proceed with her request for punitive damages, but for reasons other than those argued by Defendants.

Section 1981a allows for "the complaining party" to "recover[] compensatory and punitive damages as allowed in subsection (b) . . . ."  42 U.S.C. § 1981a(a)(2).  Subsection (b), however, specifically excludes punitive damages against "a government, government agency or political subdivision."  42 U.S.C. § 1981a(b)(1).  Accordingly, Plaintiff may not seek punitive damages against either the County or DPW.  <u>See</u> <u>Palmieri v. City of Hartford</u>, 947 F. Supp. 2d 187, 207 (D. Conn. 2013) ("Courts have found that punitive damages against municipalities are unavailable under the ADA.");  <u>Liss v. Nassau Cnty.</u>, 425 F.

Supp. 2d 335, 343 (E.D.N.Y. 2006) (dismissing punitive damages in an ADA action against Nassau County, Nassau County Department of Public Works, and the Nassau County Department of Recreation and Parks); Gemerek v. Buffalo Sewer Auth., No. 99-CV-0879, 2001 WL 603694, at *3 n.5 (W.D.N.Y. May 23, 2001) (finding that the plaintiff did not have a valid claim for punitive damages against the Buffalo Sewer Authority, nor could the plaintiff maintain an action for punitive damages pursuant to the NYSHRL).

To the extent that Plaintiff seeks appropriate damages other than punitive damages, or that Defendants' intent is at all relevant to any further inquiry, these present questions of fact for the jury. See Robinson v. Purcell Const. Corp., 859 F. Supp. 2d 245, 264 (N.D.N.Y. 2012) ("The Court agrees with Plaintiff's proposition that the question of intent cannot be decided on summary judgment . . . .").

Defendants' motion for summary judgment, insofar as it seeks dismissal of Plaintiff's request for punitive damages pursuant to Section 1981a is GRANTED.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

<u>CONCLUSION</u>

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.   It is GRANTED as to Plaintiff's request for punitive damages pursuant to 42 U.S.C. § 1981a. Defendants' motion is otherwise DENIED.


SO ORDERED.


/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: July __11__, 2014
       Central Islip, NY